# Exhibit 2

JiQiang Xu v. Michigan State University, 195 Fed.Appx. 452 (2006)
214 Ed. Law Rep. 568, 2006 Fed.App. 0640N

195 Fed.Appx. 452
This case was not selected for
publication in West's Federal Reporter.
See Fed. Rule of Appellate Procedure 32.1 generally
governing citation of judicial decisions issued on or after
Jan. 1, 2007. See also U.S.Ct. of App. 6th Cir. Rule 32.1.
United States Court of Appeals,
Sixth Circuit.

JIQIANG XU, Plaintiff–Appellant,
v.
MICHIGAN STATE UNIVERSITY; Michigan State
University College of Education; Dr. Kenneth A.
Frank; Dr. Betsy J. Becker; Dr. David E. Wright;
Dr. Cassandra Book, Defendants–Appellees.

No. 05–1372.
|
Aug. 24, 2006.

**Synopsis**
**Background:** Doctoral student brought § 1983 claims against state university, its college of education, and university and college officials, asserting violations of First Amendment free speech rights and Fourteenth Amendment due process and equal protection rights, based on allegations that academic adviser took credit for student's work, that defendants failed to award a doctoral degree to student, and that student was denied a full and fair grievance hearing. The United States District Court for the Western District of Michigan granted summary judgment to defendants. Plaintiff appealed.

**Holdings:** The Court of Appeals, Julia Smith Gibbons, Circuit Judge, held that:

[1] for limitations purposes, § 1983 claims relating to academic adviser and failure to award doctoral degree accrued at the latest when college official informed student that he would not be granted a formal grievance hearing and that she considered the matter closed, and

[2] university did not violate student's procedural due process rights.

Affirmed.

**Procedural Posture(s):** On Appeal; Motion for Summary Judgment.

West Headnotes (3)

[1]     **Civil Rights** ⬅ Education

Statute of limitations for doctoral student's § 1983 claims against Michigan state university, its college of education, and university and college officials, asserting violations of First Amendment free speech rights and Fourteenth Amendment due process and equal protection rights, based on allegations that academic adviser took credit for student's work, that defendants failed to award a doctoral degree to student, and that student was denied a full and fair grievance hearing, was Michigan's three-year statute of limitations for personal injury claims. U.S.C.A. Const.Amends. 1, 14; 42 U.S.C.A. § 1983; M.C.L.A. § 600.5805(10).

14 Cases that cite this headnote

[2]     **Limitation of Actions** ⬅ Civil rights

Doctoral student's § 1983 claims against state university, its college of education, and university and college officials, asserting violations of First Amendment free speech rights and Fourteenth Amendment due process and equal protection rights, based on allegations that academic adviser took credit for student's work and that defendants failed to award a doctoral degree to student, accrued, for limitations purposes, at the latest when college official informed student that he would not be granted a formal grievance hearing and that she considered the matter closed. U.S.C.A. Const.Amends. 1, 14; 42 U.S.C.A. § 1983.

5 Cases that cite this headnote

[3]     **Constitutional Law** ⬅ Notice and Hearing; Proceedings and Review

        **Education** ⬅ Graduate students

State university did not violate doctoral student's procedural due process rights, as to student's grievance regarding academic adviser taking credit for student's work; college department within university thoroughly investigated the grievance filed with department, department's investigator proposed at least four different solutions, all of which the student rejected, and student later met with a university official responsible for research ethics and college's associate dean, but student failed to take advantage of university-level formal grievance procedures and did not respond to correspondence from associate dean for five months, resulting in associate dean informing student the matter would be closed. U.S.C.A. Const.Amend. 14.

6 Cases that cite this headnote

**\*453** On Appeal from the United States District Court for the Western District of Michigan.

Before: COLE, GIBBONS, and ROGERS, Circuit Judges.

**Opinion**

JULIA SMITH GIBBONS, Circuit Judge.

**\*\*1** JiQiang Xu appeals a district court order dismissing on statute of limitations grounds three claims brought pursuant to 42 U.S.C. § 1983. Xu argues on appeal **\*454** that the district court erred in finding that the injuries giving rise to his cause of action occurred more than three years prior to the filing of the instant lawsuit. We affirm the grant of summary judgment as to the first two claims on statute of limitations grounds. Although the third claim was possibly brought within the applicable limitations period, summary judgment is appropriate as there is no genuine issue for trial.

I.

Xu was a doctoral student in the Department of Counseling, Educational Psychology and Special Education ("Department"), which is part of the College of Education ("College") at Michigan State University ("University"). In the spring of 1998, Xu learned that his academic adviser, Dr. Kenneth Frank, had listed himself as a second author on one of Xu's research papers. Though his rationales for doing so are not clear, it appears that Frank believed he deserved credit for assisting Xu, who has some difficulty with the English language, in making his papers more "publishable." In December 1998, Xu submitted his final dissertation to complete his graduation requirements. Six months later, Xu learned that his degree had not been awarded because Frank had not processed his dissertation. In October 1999, Xu filed a complaint with the Department, claiming that Frank had taken credit for his work and that he had completed the requirements for his program but had not been granted a degree. The Department asked Dr. Betsy Becker to investigate. Becker proposed at least four different solutions in 2000 and early 2001, all of which were rejected by Xu. Becker summarized her attempts to resolve the matter in a written report in January 2001. Xu objected to this report, and in March 2001, he filed a grievance against Becker. Dr. David Wright, the University's Assistant Vice President for Research Ethics and Standards, met with Xu in March 2001. Xu claims that Wright "proved to be more of an obstruction," and no solution resulted from the meeting. Xu next complained to Dr. Cassandra Book, the Associate Dean of the College of Education, and stated his intent to take advantage of the University's formal grievance procedures. However, he failed to follow up on this request and did not respond to later correspondence sent by Book. On August 13, 2001, Book sent a letter to Xu stating:

> I have reviewed my correspondence with you over the last five months and find that you have not responded to the opportunity to obtain assistance in clarifying your proposed grievance so that your claim of violation of your rights as a graduate student can be heard by a college panel. Since you have not responded to my email of June 5, 2001 nor my letter of July 3, 2001, I will consider this matter closed.

Six months later, Xu renewed his complaint, sending letters to the President of the University and other University Executive Officers. On August 15, 2002, Book again wrote Xu to reaffirm the University's position: "President McPherson and Dr. Simon concur with my letter to you dated August 13, 2001 in which I indicated that the University considers the matter

closed." Again on February 17, 2003, Wright wrote Xu and informed him that as of August 13, 2001, "the University considered the matter closed." In September 2003, Book informed Xu that his diploma would be awarded "upon [his] signature" but since he was "no longer a student at MSU," she had "no more information ... to share with him."

**2 Xu took no further action until December 7, 2004, when he filed this lawsuit claiming that the defendants had violated *455 his constitutional rights. In addition to the University and its College of Education, Xu sued Frank, Becker, Wright, and Book. Specifically, Xu argued that the University infringed his right to free speech under the First Amendment and violated his rights to due process and equal protection under the Fourteenth Amendment. Defendants filed a motion to dismiss, which the court converted into a motion for summary judgment pursuant to Fed.R.Civ.P. 56. The district court granted the motion, dismissing the First Amendment claims on the merits and the Fourteenth Amendment claims as untimely. The court ruled that the three-year statute of limitations on his claim began to run no later than August 13, 2001, the date on which he received the letter from Book. Xu did not file his claim until December 2004, four months after the expiration of the limitations period. As all of the federal claims were dismissed, the court exercised its discretion under 28 U.S.C. § 1367(c)(3) and dismissed the state law claims without prejudice. Xu filed a timely appeal, challenging only the dismissal of the Fourteenth Amendment claims on statute of limitations grounds.

II.

A district court's grant of summary judgment is reviewed *de novo*. McWane, Inc. v. Fidelity & Deposit Co. of Md., 372 F.3d 798, 802 (6th Cir.2004). Summary judgment is proper when there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). We view the evidence, and draw all reasonable inferences, in favor of Xu, the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Xu's complaint, while somewhat ambiguous, appears to raise three claims under the Fourteenth Amendment: (1) that Frank took credit for some of his work, thereby depriving him of his intellectual property; (2) that the defendants have failed to award him his degree, for which he has met all of the requirements; and (3) that the defendants have denied him his due process right to a "full and fair hearing" through the university grievance procedure. The first two claims are barred by the statute of limitations; the third claim, even if not barred by the limitations period, is meritless.[1]

A.

[1] The parties do not dispute that the relevant limitations period is three years. The Supreme Court held in *Wilson v. Garcia* that the statute of limitations for § 1983 actions is the same as the limitations period for personal injury claims under state law. 471 U.S. 261, 276, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). Under Michigan law, the limitations period is three years. Mich. Comp. Laws § 600.5805(10) (2005); *see also* Carroll v. Wilkerson, 782 F.2d 44, 45 (6th Cir.1986) (finding the relevant limitations period in Michigan to be three years). As Xu filed his complaint on December 7, 2004, his cause of action must have accrued no earlier than December 7, 2001.

**3 Federal law is used to determine "when the statute of limitations begins to run, that is, when the cause of action accrues." Dixon v. Anderson, 928 F.2d 212, 215 (6th Cir.1991). The limitation period is triggered *456 "when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Id.* (quoting Sevier v. Turner, 742 F.2d 262, 273 (6th Cir.1984)). For cases arising under § 1983, this court has looked to "what event should have alerted the typical lay person to protect his or her rights." *Id.* (citing Conlin v. Blanchard, 890 F.2d 811, 815 (6th Cir.1989)). The key date for the accrual of the limitations period is the injury, not the completion of any grievance process. The Supreme Court has stated that "[t]he grievance procedure, by its nature, is a *remedy* for a prior decision, not an opportunity to *influence* that decision before it is made...." Delaware State College v. Ricks, 449 U.S. 250, 261, 101 S.Ct. 498, 66 L.Ed.2d 431 (emphasis in original). Although *Ricks* involved an employment decision—a denial of tenure—its reasoning is applicable to the case at hand. Like the adverse decision in *Ricks*, Xu's injuries were not "tentative"—they had already occurred and the administrative hearing was only one possible avenue to remedy them. *Id.* at 260–61, 101 S.Ct. 498. The

existence of the grievance procedure did not change the fact that Xu became aware of the injuries which are the basis of his action and the need to protect his rights prior to December 7, 2001.

[2] Viewing the facts in his favor, Xu became aware that he had suffered an injury that could give rise to a cause of action at the hands of each of the defendants prior to December 2001. In his complaint, Xu acknowledges that he learned as early as April 1998 that Frank had put his own name on one of Xu's papers. Xu also learned in 1999 that his degree had not been awarded because Frank had not processed his dissertation. He raised these two concerns in his complaint with the Department that was filed in October 1999. Xu's injuries at the hands of Becker occurred in 2000 and early 2001, as he found her to be obstructing his claim against Frank and rejected all of her proposed solutions. Xu filed a grievance against Becker in March 2001. Xu also stated in his complaint that Wright injured him in March 2001, by being "an obstruction" who was completely unhelpful and was not interested in resolving Xu's problem. Finally, Book injured Xu on August 13, 2001, when she informed him that the College would not grant him a hearing and that she "consider[ed] this matter closed." By the date of each of these events, if not earlier, Xu was alerted of the need to protect his rights regarding the deprivation of his intellectual property and the withholding of his degree. All of the events occurred prior to December 7, 2001. As the availability of a grievance remedy does not change the calculus, see *Ricks*, 449 U.S. at 261, 101 S.Ct. 498, the claims were brought outside of the three-year limitations period, and the ruling of the district court granting summary judgment for counts 1 and 2 on statute of limitations grounds is affirmed.[2]

B.

**4 Xu's third claim is that the University's grievance procedure did not conform with due process. As noted above, the existence of a grievance procedure does not postpone the accrual of the limitations period for a separate injury. A claim that the grievance process itself resulted in an injury, however, necessarily cannot accrue until the completion of that process. See *457 *Kelly v. Burks*, 415 F.3d 558, 561 (6th Cir.2005). The university grievance procedure likely concluded no later than Book's August 13, 2001, letter, which should have alerted Xu to the fact that he was already tardy in the protection of his rights and that any further action should be immediately undertaken. But because the date of conclusion is not entirely clear, we assume *arguendo* that it was not until February 17, 2003, when Wright, a University Vice President, notified Xu that the University considered the matter closed. Under this assumption, Xu's third claim was brought within the three-year limitations period.

In this claim, Xu argues that after his grievance was denied by Book at the college level, he was due one final review at the higher, "university" level. He thus claims that the University deprived him of his due process rights by not following its own procedures. Whether Michigan State followed its own internal procedures, however, is not the proper inquiry. "Violation of a state's formal procedure ... does not in and of itself implicate constitutional due process concerns." *Purisch v. Tenn. Tech. Univ.*, 76 F.3d 1414, 1423 (6th Cir.1996) (citing *Levine v. Torvik*, 986 F.2d 1506, 1515 (6th Cir.1993), *overruled in part on other grounds by Thompson v. Keohane*, 516 U.S. 99, 111, 116 S.Ct. 457, 133 L.Ed.2d 383 (1995)). "A state cannot be said to have a federal due process obligation to follow all of its procedures; such a system would result in the constitutionalizing of every state rule, and would not be administrable." *Levine*, 986 F.2d at 1515. Thus, the inquiry is not whether the University conformed to its own internal grievance procedures, but rather if Xu was afforded the due process guaranteed under the Fourteenth Amendment.

[3] Viewing the facts in the light most favorable to Xu, we find that the University's investigation into the matter complied with the requirements of due process. After learning of Xu's complaints, the Department conducted a thorough investigation of the claim. On at least three occasions, Becker shared her findings and proposed resolutions with Xu, allowed him to respond and followed-up with modified proposals. The fact that Xu found these solutions unsatisfactory does not alone give rise to a due process concern. The Department finally summarized its conclusions in a written report in January 2001. Xu responded to this report in writing and was given a chance to meet with Wright and Book. After these meetings, Xu stopped corresponding with Book and the matter was closed. This court has held that due process does not always require a "full evidentiary hearing" and that the formality and exact procedures required can vary depending on the nature of the interests asserted. *Purisch*, 76 F.3d at 1423–24 (internal citations omitted). Rather, due process requires " 'that an individual be given

*JiQiang Xu v. Michigan State University,* 195 Fed.Appx. 452 (2006)
214 Ed. Law Rep. 568, 2006 Fed.App. 0640N

an opportunity for a hearing before he is deprived of any significant property interest.' " *Id.* at 1423 (quoting *Boddie v. Connecticut,* 401 U.S. 371, 379, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971)). Xu cannot claim that he was denied such an opportunity. The University, through Book, offered to arrange for Xu's grievance to be heard by a college panel in the spring and early summer of 2001, and Xu failed to respond to these overtures. Only after five months of hearing nothing from Xu did Book inform him that the matter would be closed. This decision, and the University's refusal to reopen the matter, do not violate due process. *Cf. Wilson v. Bd. of Trustees of Comm. Coll. of Balt. Cty.,* 333 F.Supp.2d 392, 398 (D.Md.2004) (finding that a lack of a hearing does not violate due process if one is not requested). Given the circumstances and the nature of the claim, *458 the University afforded Xu all of the process he was due.

**\*\*5** As there is no genuine issue of material fact for trial, *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), we affirm the grant of summary judgment on the third count.

III.

The judgment of the district court is affirmed for the reasons stated above.

**All Citations**

195 Fed.Appx. 452, 2006 WL 2456925, 214 Ed. Law Rep. 568, 2006 Fed.App. 0640N

**Footnotes**

1   The merits of Xu's second claim are also suspect, as Xu's failure to have his degree awarded appears to be of his own doing. The record reflects numerous messages from University officials to Xu that his degree will be awarded if he signs the proper paperwork. Counsel for the University reaffirmed this position at oral argument.

2   Xu also attempts to argue that the statute of limitations should be tolled under Michigan's fraudulent concealment statute, Mich. Comp. Laws § 600.5855 (2005). As he did not make this argument to the district court, it is waived. *See Foster v. Barilow,* 6 F.3d 405, 407–08 (6th Cir.1993).

End of Document   © 2025 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW   © 2025 Thomson Reuters. No claim to original U.S. Government Works.   5